OPINION
{¶ 1} On June 6, 1998, Darlene Amore was a passenger in her own van being driven by her husband, Thomas Amore, when it was rear-ended by Elizabeth Brennan. As a result of the accident, Mrs. Amore sustained injuries and lost wages.
 {¶ 2} At the time of the accident, Mrs. Amore was employed by The Thomson Corporation, insured under a business auto policy issued by Continental Insurance Company. Mr. Amore was employed by FujiFilm America, Inc., insured under a business auto policy issued by Tokio Marine and Fire Insurance Company, Ltd. Both Mr. and Mrs. Amore were insured under a personal insurance policy issued by Grange Mutual Casualty Company.
 {¶ 3} On June 5, 2000, appellees, Mr. and Mrs. Amore, filed a complaint against Grange and Continental, seeking underinsured motorists benefits. On February 9, 2001, appellees filed an amended complaint, adding Tokio as a party defendant. Grange filed cross-claims against Continental and Tokio for contribution on a pro-rata basis.
 {¶ 4} All the insurance companies filed motions for summary judgment. By judgment entry pending summary judgment motions filed May 1, 2002, the trial court denied the motions, finding appellees were entitled to underinsured motorists benefits under all three policies, with Grange's coverage being primary and the remaining policies being excess.
 {¶ 5} On July 24, 2002, the parties filed a joint stipulation, stating Grange paid its policy limits, the remaining damages were $200,000 and any prejudgment interest claims had yet to be decided.
 {¶ 6} By judgment entry on plaintiff's motion for judgment and prejudgment interest filed September 20, 2002, the trial court resolved the remaining issues in the case.
 {¶ 7} Continental filed a notice of appeal (Case No. 02CA70) and Grange filed a cross-appeal. This matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 8} "The trial court erred in declaring that plaintiffs are entitled to underinsured motorist coverage under the commercial auto policy issued by defendant-appellant continental insurance company, and in denying continental's motion for summary judgment on the same policy."
 {¶ 9} Grange's cross-assignments of error are as follows:
 I {¶ 10} "The trial court erred in overruling defendant-appellant, Grange Mutual Casualty Company's, motion for summary judgment, and erred in holding 'the February 1, 2002 motion of defendant grange is overruled. grange's coverage is the primary insurance coverage for plaintiff, and Continental's and Tokio's are excess coverage.'"
 II {¶ 11} "The trial court erred in holding 'judgment is entered in favor of plaintiffs against defendant Grange Mutual Casualty Co. in the amount of $11,397.26 plus interest at 10% per annum from 9-9-02 until paid. * * * Costs are assessed one-half against grange, one-fourth against Tokio and one-fourth against continental."
 I {¶ 12} Continental claims the trial court erred in determining appellees were insureds under its underinsured motorists coverage. Specifically, Continental claims the mere reference to an Ohio statute in the uninsured/underinsured motorists coverage endorsement does not rise to the level of a choice-of-law clause, and under Ohayon v. Safeco Insurance Company of Illinois, 91 Ohio St.3d 474, 2001-Ohio-100, the applicable law governing the policy sub judice is Connecticut law. Continental further claims appellees violated the notice provision of the policy.
 {¶ 13} Continental does not dispute that if Ohio law is controlling, its definition of an "insured" under the uninsured/underinsured motorists coverage is identical to the definition in Scott-Pontzer v. Liberty Mutual Fire Insurance Co., 85 Ohio St.3d 660,1999-Ohio-292. See, Section B of the Ohio Uninsured Motorists Coverage — Bodily Injury, Endorsement No. CA 21 33 06 95, attached to Continental's Brief as Exhibit E.
 {¶ 14} In its judgment entry of May 1, 2002, the trial court found Ohio law to be controlling because "the insurance contract itself specifies Ohio law applies" and because "Ohio has the closest and most significant contact with the subject of this dispute."
 THE INSURANCE CONTRACT {¶ 15} In finding "the insurance contract itself specifies Ohio law applies," the trial court cited the following language from Section F(3)(b) of the Ohio Uninsured Motorists Coverage — Bodily Injury, Endorsement No. CA 21 33 06 95, attached to Continental's Brief as Exhibit E:
 {¶ 16} "F. ADDITIONAL DEFINITIONS
 {¶ 17} "3. 'Uninsured motor vehicle' means a land motor vehicle or trailer:
 {¶ 18} "b. Which is an underinsured motor vehicle. An `underinsured motor vehicle' means a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged but their limits are less than the Limit of Insurance of this coverage;"
 {¶ 19} We do not find the reference to an Ohio statute, "the applicable law where a covered 'auto' is principally garaged," is tantamount to a choice-of-law clause for the following reasons. The reference is in a definitional section regarding the amount of mandatory insurance for an underinsured vehicle and not for the insured's vehicle. The provision defines the limits of coverage, not the applicable law to be used in the master policy. The inclusion of an Ohio, or any other state's, uninsured/underinsured motorists coverage endorsement does not automatically dictate that Ohio law is the governing law of the policy. To so hold would make the policy sub judice subject to the contract laws of forty-three different states. See, Continental's Brief at 10.
 SIGNIFICANT CONTACT {¶ 20} In Ohayon, supra at 477, the Supreme Court of Ohio held the following:
 {¶ 21} "To resolve the choice-of-law issue, the Gries [Sports Ent., Inc. v. Modell (1984), 15 Ohio St.3d 284] court examined the factors in Section 188 of the Restatement. Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has 'the most significant relationship to the transaction and the parties.' Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."
 {¶ 22} Apart from the definitional language cited supra, there is no choice-of-law clause in the policy. Pursuant to Ohayon, the Restatement of Conflicts, Section 188(2) applies. Using the provisions therein as cited supra, the trial court found the following:
 {¶ 23} "According to the documents before the court, the place of contracting is Chicago, Illinois (the 'dated at' address on the policy attached as exhibit 5 to plaintiff's March 14, 2002 reply), the place of negotiation is Connecticut (affidavit of Michael Warren) the place of performance includes Ohio, the location of the subject matter of the contract — the cars and businesses insured — includes Ohio, the place of incorporation is Ontario Canada (affidavit of Michael Warren) and the place of business varies with the various subsidiaries and includes Ohio.
 {¶ 24} "As explicitly set out in the Restatements, each of the above elements does not merit equal weight. * * * The location of the subject matter of the contract is very significant. * * *
 {¶ 25} "The subject of this dispute is the 'Ohio Underinsured Motorist Coverage' endorsement of Continental's policy. The label on the endorsement proves Continental knew it was providing underinsured coverage in Ohio. As the plaintiffs point out without contradiction from defendants, Thomson Newspapers operated several newspapers in Ohio, transacted $145,696,381 of business in Ohio in 1997 and had assets in Ohio in 1997 with a book of $110,247,028. Ohio has the closest and most significant contact with the subject of this dispute. Its law should apply."
 {¶ 26} Given our review of the trial court's decision, we are unable to find the trial court abused its discretion or misinterpreted the facts in light of the Restatement of Conflicts. We find the trial court's decision, that Ohio has significant contact with the subject matter of the policy to permit Ohio law to apply, to be correct.
 {¶ 27} Because the "Who Is An Insured" language in the Continental policy is identical to the language in Scott-Pontzer, we find appellees are insureds under Continental's underinsured motorists provisions of the business auto policy.
 {¶ 28} Continental further claims appellees failed to give "prompt notice" of the "'accident', claim, 'suit' or 'loss'." See, Section IV(2)(a) of the Business Auto Coverage, attached to Continental's Brief as Exhibit E.
 {¶ 29} In its judgment entry of May 1, 2002, the trial court specifically found Continental had sufficient and prompt notice:
 {¶ 30} "But the facts show the defendant was not deprived of prompt notice. It was given notice less than 2 years after the collision. The plaintiffs also made Continental a party to the action when it was originally filed on June 5, 2000. Continental had the same chance to investigate, conduct a defense and make cross claims as all the other defendants in this action. The alleged tortfeasor was not released before Continental could make claims against him.
 {¶ 31} "According to plaintiff Darlene Amore's affidavit, uncontradicted by defendants, it took her until 18 months after the collision to learn the extent of her injuries and the amount of the tortfeasor's coverage. Continental did get timely notice."
 {¶ 32} In Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, the Supreme Court of Ohio examined the issue of notice. The court stated the following at 90:
 {¶ 33} "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice 'within a reasonable time in light of all the surrounding facts and circumstances.' Ruby [v. Midwestern Indemn. Co. (1988),40 Ohio St.3d 159], syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut."
 {¶ 34} Upon review, we find the trial court had sufficient facts to satisfy the issues raised by Ferrando and resolved the issue of prejudice.
 {¶ 35} The sole assignment of error is denied.
 CROSS-ASSIGNMENT OF ERROR I {¶ 36} Grange claims the trial court erred in determining the coverage afforded under the underinsured motorists provisions of the Continental and Tokio policies. We agree as to Continental's policy, but consistent with our opinion in 02CA75, we deny the cross-assignment of error as to Tokio.
 {¶ 37} The gravemen of this cross-assignment of error is whether Continental's policy should be considered primary or excess coverage. Motorists Mutual Insurance Co. v. The Lumbermans Mutual Insurance Co. (1965), 1 Ohio St.2d 105. Under the theory "that insurance on the car is primary and insurance on the driver is excess," the trial court found Continental's coverage to be excess. We disagree with the adoption of this "rule of thumb" philosophy used by the trial court.
 {¶ 38} Once Scott-Pontzer dogma dictates that the word "you" means not only the corporation but employees of the corporation, the term "you" must be defined the same way throughout the policy. See, United Ohio Company v. Bird (May 18, 2001), Delaware App. No. 00CA31, adopting the philosophy of Lyttle v. Progressive Casualty Insurance Co. (February 4, 1999), Cuyahoga App. No. 73620.
 {¶ 39} Continental's policy states the following in pertinent part at Section E(1) of the Ohio Uninsured Motorists Coverage — Bodily Injury, Endorsement No. CA 21 33 06 95, attached to Grange's Brief as Exhibit G:
 {¶ 40} "If there is other applicable insurance available under one or more policies or provisions of coverage:
 {¶ 41} "a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.
 {¶ 42} "b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
 {¶ 43} As a Continental employee entitled to coverage, the "you" becomes Darlene Amore and the provision reads: "Any insurance we provide with respect to a vehicle Darlene Amore does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis." By substituting Darlene Amore's name for "you," the coverage becomes primary because the vehicle involved belonged to Darlene Amore. This finding is consistent with our decision in Poulton v. American Economy Insurance Co. (December 23, 2002), Stark App. Nos. 2002CA00038 2002CA00061.
 {¶ 44} In its policy at Section E(c)(1) of the Ohio Uninsured Motorists Coverage — Bodily Injury, Endorsement No. CA 21 33 06 95, attached to Grange's Brief as Exhibit G, Continental provides the following:
 {¶ 45} "c. If the coverage under this Coverage Form is provided:
 {¶ 46} "(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis."
 {¶ 47} Based upon this provision, the allocation of loss between Grange and Continental is on a pro-rata basis.
 {¶ 48} Cross-Assignment of Error I is granted as to Continental and denied as to Tokio.
 CROSS-ASSIGNMENT OF ERROR II {¶ 49} Grange claims the trial court erred in awarding prejudgment interest. If prejudgment interest is appropriate, Grange claims the "trigger date" should be May 1, 2002, the date of the trial court's ruling on the summary judgment motions. Grange further claims Continental and Tokio should equally share in the allocation of the costs. Pursuant to our decision in Case No. 02CA75, Tokio is not an insurer and therefore this cross-assignment of error is denied as to Tokio.
 {¶ 50} An award of prejudgment interest is reviewable under an abuse of discretion standard. Landis v. Grange Mutual Insurance Co. (1998), 82 Ohio St.3d 339. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217. In Landis at 342, the Supreme Court of Ohio stated the following:
 {¶ 51} "Whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C. 1343.03(A) the amount of prejudgment interest due Landis and enter an appropriate order."
 {¶ 52} In the case sub judice, the trial court ordered interest against Grange from May 30, 2000, the date "Grange acknowledged receipt of plaintiff's letter telling Grange that the tortfeasor's insurer had offered its $50,000 policy limits for a release, and asking for Grange's consent to settle with the tortfeasor." See, Judgment Entry filed September 20, 2002. This decision follows this writer's opinion that the appropriate date to commence interest is the date of notice or acknowledgement of exhaustion of the tortfeasor's policy limits. Using this philosophy, the appropriate date to commence interest against Grange is May 30, 2000.
 {¶ 53} Upon review, we find the trial court did not abuse its discretion in ordering Grange to pay prejudgment interest from May 30, 2000.
 {¶ 54} Given our opinion above and in Case No. 02CA75, we find the costs are to be allocated on an equal basis against Grange and Continental.
 {¶ 55} Cross-Assignment of Error II is denied, except it is granted as to the allocation of costs against Continental only.
 {¶ 56} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed in part and reversed in part.
By Farmer, J., and Gwin, P.J. concur. Edwards, J. dissents in part.